UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ERNIE D. TUCKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:16-cv-1337 |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL[1], Acting | ) | **MEMORANDUM OPINION AND ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*\*

Plaintiff Ernie D. Tucker brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income (SSI). The Court, having reviewed the record, will **AFFIRM** the Commissioner's decision as it is supported by substantial evidence.

**I.**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of*

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

II.

On July 5, 2012, Plaintiff filed his applications for disability insurance benefits and SSI alleging disability as of January 1, 2009 which he later amended to February 1, 2011 (Tr. 14, 37, 179 ). He alleged disability due to chronic obstructive pulmonary disease (COPD), diabetes, high cholesterol, nerve damage, and loss of feeling in the right ankle (Tr. 265). Plaintiff's claims were denied initially and on reconsideration and Plaintiff then requested a hearing on the matter (Tr. 156). Administrative Law Judge ("ALJ") Renee S. Andrews-Turner conducted a hearing, but thereafter denied Plaintiff's claims (Tr. 14-27). On April 16, 2016, the Appeals Council declined Plaintiff's request for review (Tr. 4-10), making the ALJ's October 31, 2014, decision the final agency decision for purposes of judicial review. This appeal followed and the case is ripe for review pursuant to 42 U.S.C. § 405(g)[2].

III.

After careful consideration of the entire record, the ALJ found that Plaintiff had severe impairments that included diabetes mellitus with neuropathy; chronic obstructive pulmonary disease; hyperlipidemia; anxiety disorder; a depressive disorder;

---

[2] The Court notes that Plaintiff has not filed a reply to Defendant's response to his motion for judgment on the record.

3

and a personality disorder (Tr. 17). However, the ALJ found that he did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1 (Tr. 17).

The ALJ determined that Plaintiff retained the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and walk three hours in an eight-hour workday; has no sitting restrictions; occasionally push and pull with the bilateral lower extremities. He should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; could understand, remember, and carry out simple instructions; could occasionally interact with coworkers and supervisors; could have no interaction with the general public; and could adapt to infrequent change in the workplace(Tr 19).

The ALJ found that Plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, including work as an inspector, table worker, and assembler (Tr. 26). Consequently, ALJ Turner-Andrews concluded that Plaintiff was not disabled (Tr. 27).

**IV.**

Although Plaintiff generally argues that the ALJ's decision was not supported by substantial evidence, he raises several specific issues: whether the ALJ properly evaluated the severity

4

of Plaintiff's impairments, whether the ALJ properly considered Plaintiff's mental impairments, and whether substantial evidence supported the finding that Plaintiff could perform "other" work.

Plaintiff alleges that the ALJ erred in evaluating the severity of his impairments because the ALJ did not find that hand neuropathy was a separate impairment, even while reaching the overall finding that Plaintiff had diabetic neuropathy. See Pl.'s Br. at 13. However, the ALJ could find that despite a finding that Plaintiff had diabetic neuropathy, the medical evidence did not show that Plaintiff had a distinct additional impairment of hand neuropathy (Tr. 17).

The ALJ found that Plaintiff had severe impairments, including diabetes with neuropathy, COPD, hyperlipidemia (i.e. high cholesterol), depression, and personality disorder (Tr. 17). However, the ALJ declined to find that Plaintiff had the specific additional impairment of neuropathy in the hands, finding that the record did not support that this was a medically determinable impairment (Tr. 17).

A severe impairment is an impairment that more than minimally impacts an individual's ability to work. *See* 20 C.F.R. § 404.1521 (severe impairments); SSR 96-3p. Plaintiff has the burden of showing that the impairment is severe and that it met the 12 month durational requirements of the Act. *See Harley v. Comm'r of Social*

*Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). He must also show that the impairment significantly limits his ability to perform basic work activities. *Id.*

Here, while the ALJ found that the record support an impairment of *diabetic neuropathy*, he further found there was inadequate evidence to support a medically determinable second impairment of hand neuropathy (Tr. 17). In support of this finding, the ALJ referred to Plaintiff's treatment records from the Wilson County Health Department (Tr. 17, citing Tr. 490-545). Citing this record (Exhibit 7F), the ALJ noted that there was no medical evidence to support the diagnosis in the file (Tr. 17, Tr. 490-545). Plaintiff did have diabetes and had reported tingling in his hands and shoulders (Tr. 492-93). However, these records do not contain objective support and consist primarily of complaints and diagnoses (Tr. 492-93).

The ALJ considered that at the consultative examination Plaintiff had diminished grip strength, but the neurological examination was negative (Tr. 17). This is supported by the examination records from Roy Johnson, M.D. (Tr. 487). Plaintiff complained of numbness in his hands (Tr. 487) as well as numbness and tingling (Tr. 488). But, objective abnormalities were not noted in the neurological area (Tr. 489). Plaintiff had diminished left grip strength, but full right grip strength (Tr. 489). The

6

doctor did not explain why Plaintiff's grip strength in one hand was diminished (Tr. 489). Despite this grip strength limitation, the doctor still believed that Plaintiff could lift up to 20 pounds, and Dr. Johnson did not limit Plaintiff's ability to use his hands (Tr. 489). The ALJ concluded no evidence supported hand neuropathy (Tr. 17).

The ALJ's decision shows that Plaintiff's diabetic neuropathy was considered multiple times during the evaluation of Plaintiff's residual functional capacity. ALJ Turner-Andrews considered that on examination Plaintiff could "ambulate effectively and perform both fine and gross manipulations despite his neuropathy" (Tr. 18). Based on Plaintiff's testimony, the ALJ considered that Plaintiff had not seen a specialist for neuropathy and that a medication, Gabapentin, helped his neuropathy symptoms (Tr. 20, 44, 55, 61).

Furthermore, the ALJ considered that Plaintiff's neuropathic complaints were fairly scattered at medical visits (Tr. 24). While he had some neuropathy issues, they were more moderate in nature (Tr. 24). The ALJ did, however, find that Plaintiff would have additional limitations in standing and walking due to neuropathy in his feet (Tr. 25). The residual functional capacity limited Plaintiff to only three hours per day of standing and walking (Tr. 19). The ALJ properly considered Plaintiff's alleged neuropathy. As long as the ALJ considers all of an individual's impairments,

the "failure to find additional severe impairments . . . does not constitute reversible error." *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007)).

Plaintiff argues that it is inconsistent for the ALJ to find that he had diabetic neuropathy but not neuropathy in his hands. However, a fair reading of the ALJ's statements is that Plaintiff had no separate and distinct impairment of hand neuropathy as discussed above.

Plaintiff goes on to complain that the ALJ should not have considered the absence of nerve conduction studies. But the absence of those studies would suggest that an examining physician did not believe that Plaintiff's complaints warranted those studies.

Plaintiff next relies on the diminished grip strength noted during the consultative examination which was considered by the ALJ (Tr. 17). Plaintiff tries to make a connection between grip strength and hand neuropathy that the consulting doctor did not make, however. While Plaintiff cites a medical article stating that this could be one reason for the diminished grip strength, this is highly speculative on Plaintiff's part. The doctor, having measured the grip strength, did not reach this conclusion. Significantly, the doctor did not provide any limitations in the

8

use of the hands and found that Plaintiff could still lift up to 20 pounds (Tr. 489). The doctor also found no neurological abnormalities (Tr. 489). Regardless of why Plaintiff had diminished grip strength, this limitation was accommodated by the ALJ's limitation to lifting 20 pounds, which was consistent with the doctor's opinion (Tr. 489). This was substantial evidence to support the ALJ's findings.

Plaintiff makes the general claim that the finding of severe diabetic neuropathy is illogical given that the ALJ found that Plaintiff did not have hand neuropathy. But this is not illogical, as the finding by the ALJ means that Plaintiff did have neuropathy in the lower extremities, and Plaintiff's ability to stand and walk was limited accordingly. In support of the additional limitation of hand neuropathy, Plaintiff relies principally on his own allegations, which are insufficient, and the grip strength testing, which was not linked to hand neuropathy by the doctor. Substantial evidence supports the ALJ's finding that the medical evidence was insufficient to establish hand neuropathy as a specific medically determinable impairment.

Plaintiff next attacks the ALJ's evaluation of his mental impairments. Specifically, Plaintiff alleges that the ALJ failed to properly apply the Psychiatric Review Technique. But, the ALJ completed the required evaluation of activities of daily living,

social functioning, concentration, and episodes of decompensation at step three of the sequential evaluation (Tr. 18). The ALJ then further considered Plaintiff's mental impairments when determining the residual functional capacity, and limited Plaintiff's capacities for work to accommodate those limitations (Tr. 19).

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. *See* 20 C.F.R. § 404.1520a. This special procedure must be followed at each level of administrative review. The ALJ must evaluate allegations of mental impairment by identifying a claimant's limitations in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id*. ALJ must include in his decision his rationale for reaching conclusions regarding the severity of the mental impairment. *See* 20 C.F.R. § 404.1520a(c)(4).

The purpose of the analysis is evaluate severity and determine whether an individual meets or equals a listing in 20 C.F.R. pt. 404, subpt. P, app 1. *See* 20 C.F.R. § 404.1520a(d). The findings are not intended to be a residual functional capacity assessment. Social Security Ruling 96-8p specifically states that "[t]he adjudicator must remember that the limitations identified in the

"paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *See* SSR 96-8p.

Contrary to Plaintiff's allegations, the ALJ made the required findings and cited sufficient evidence (Tr. 18). Plaintiff argues, in effect, that he actually should have been found to meet the listing requirements for listing 12.04 because he had two marked impairments. *See* 20 C.F.R. pt. 404, subpt. P., app. 1. However, Plaintiff again relies primarily on his own allegations in lieu of the medical evidence.

The ALJ found that Plaintiff's activities of daily living were only mildly restricted (Tr. 18). The ALJ relied on a report from the consulting psychologist (Tr. 546-53). In that report, the psychologist discussed Plaintiff's activities of daily living and functional abilities (Tr. 550). For instance, Plaintiff cared for children during the day (Tr. 550). Plaintiff did not describe marked limitations even if his statements to the psychologist were taken at face value (Tr. 550). As the ALJ later noted, Plaintiff stated that he was caring for "seven children and thus becoming irritable" (Tr. 21, 493).

Plaintiff speculates that a lack of desire or motivation based on a psychological impairment could cause marked limitations in activities of daily living. Defendant does not dispute that this

11

could occur as a general premise, but the medical evidence making that connection in this case is lacking.

The ALJ found that Plaintiff had moderate limitations in social functioning (Tr. 18). Plaintiff alleges that these limitations should have been "marked" as well. But, the ALJ relied on the findings from the consulting psychologist's examination which is substantial evidence to support the ALJ's findings (Tr. 18, 550).

Furthermore, in the residual functional capacity findings the ALJ considered Plaintiff's mental impairments and provided appropriate limitations (Tr. 19-25). Plaintiff complains that the ALJ did not properly considered the opinion from the consulting doctor, Linda Blazina, Ph.D. However, the ALJ properly relied on this report and gave it great weight (Tr. 25).

Concerning Plaintiff's functioning, Dr. Blazina opined that Plaintiff had an unimpaired ability to understand, remember, and carry out simple instructions (Tr. 551). That was incorporated into the residual functional capacity (Tr. 19).

The doctor opined that Plaintiff's "social interaction abilities are considered to be at least moderately limited. . . " (Tr. 551). This was accommodated by the ALJ's limitation to only occasional interaction with coworkers and supervisors and no interactions with the general public (Tr. 19).

The doctor believed that Plaintiff could adapt to changes in a work routine and tolerate normal workplace stress subject to moderate impairment (Tr. 551). The ALJ accommodated this when she found that Plaintiff could adapt to only infrequent workplace changes (Tr. 19).

The doctor's statements were not directly transferable to a residual functional capacity finding but the ALJ properly evaluated them and incorporated them in her findings. The ALJ is tasked with converting medical statements into vocationally relevant residual functional capacity findings.

This is because the residual functional capacity must be phrased differently. The residual functional capacity is phrased as "the most you can still do despite your limitations" under SSA's regulations. *See* 20 C.F.R. § 404.1545 (residual functional capacity). Framing the residual functional capacity in this way, an ALJ's finding that an individual has the ability to perform a "simple" job means that the "simple" job can be performed without any limitations not specified in the RFC." *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) ("In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations."). A limitation to simple type work can account for concentration deficits, as those deficits may only be encountered

13

when performing more complex work. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("Kepke, however, has not cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work.").

The ALJ properly accommodated Plaintiff's social and adaptive deficits by limiting these functions as well (Tr. 19). When interacting only occasionally with coworkers and supervisors, and with no interaction with the general public, Plaintiff would have no further limitations. Likewise Plaintiff could adapt only to "infrequent" changes in the workplace (Tr. 19). This limitation means that Plaintiff is precluded from performing jobs with requirements that exceed these findings representing the "most" that Plaintiff can do. This properly considered Plaintiff's credible limitations.[3] In sum, the ALJ properly considered Plaintiff's mental limitations.

---

[3] Plaintiff raises no issues concerning credibility. The residual functional capacity includes only those limitations that the ALJ found consistent with the record as a whole. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009) ("Residual functional capacity is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments. *See* 20 C.F.R. § 404.1545(a). In the instant matter, the ALJ determined that while Poe had 'severe impairments,' her claims regarding her limitations were 'not entirely credible,'..."). Here, the ALJ found Plaintiff's allegations not entirely credible (Tr. 24). This finding was made in accordance with SSA's regulations and policies, and Plaintiff does

Turning now to Plaintiff's argument that the ALJ erred in finding that he could perform "other" work, it is clear that this argument relies on the success of Plaintiff's prior arguments. Plaintiff identifies no abnormalities with the vocational expert testimony, assuming that the residual functional capacity finding is supported by substantial evidence.

Because the ALJ determined that Plaintiff could not perform his past work, and because he had a significant non-exertional restriction, it was necessary to obtain vocational expert testimony to assist in the determination of whether he could perform other work at step five of the sequential evaluation. *See* 20 C.F.R. §§ 404.1560(c), 404.1566(e), 404.1569, 404.1569a. The ALJ asked the vocational expert witness to assume an individual of Plaintiff's age, education, work experience, and residual functional capacity (Tr. 69). In response to the ALJ's hypothetical question, the vocational expert testified that there were jobs that such an individual could perform, including work as an inspector, table worker, and assembler (Tr. 69-70).

The ALJ's hypothetical question was proper, as an ALJ is only required to incorporate into a hypothetical question those limitations she finds credible. *See Casey v. Sec'y of Health &*

---

not appear to dispute it. *See* 20 C.F.R. § 404.1529 (evaluating subjective complaints).

*Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). A VE's testimony in response to a hypothetical question accurately portraying a claimant's vocational abilities and limitations provides substantial evidence to meet the Commissioner's burden at the fifth step of the sequential evaluation process. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

The ALJ found that Plaintiff was "not disabled" because he could perform "other" work that existed in significant numbers in the national economy (Tr. 26-27). Because the hypothetical questions included only those limitations which the ALJ found credible, and excluded those limitations discredited for a legally sufficient reason, substantial evidence supports the finding that Plaintiff could perform other work, so he is "not disabled" at the fifth step of the sequential evaluation. *See* 20 C.F.R. § 404.1520.

The ALJ's hypothetical question was proper, as an ALJ is only required to incorporate into a hypothetical question those limitations she finds credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). A VE's testimony in response to a hypothetical question accurately portraying a claimant's vocational abilities and limitations provides substantial evidence to meet the Commissioner's burden at the fifth step of the sequential evaluation process. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

The ALJ found that Plaintiff was "not disabled" because he could perform "other" work that existed in significant numbers in the national economy (Tr. 26-27). Because the hypothetical questions included only those limitations which the ALJ found credible, and excluded those limitations discredited for a legally sufficient reason, substantial evidence supports the finding that Plaintiff could perform other work, so he is "not disabled" at the fifth step of the sequential evaluation. *See* 20 C.F.R. § 404.1520.

V.

The Court having found no legal error on the part of the ALJ and that her decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for judgment on the record (DE 16) be, and the same hereby is, **DENIED**.

A separate judgment in conformity herewith shall this date be entered.

This the 18th day of December, 2017.

Sitting by Designation.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge